Todd M. Friedman (SBN 216752)
Adrian R. Bacon (SBN 280332)
Meghan E. George (SBN 274525)
Thomas E. Wheeler (SBN 308789)
LAW OFFICES OF TODD M. FRIEDMAN, P.C.
21031 Ventura Blvd, Suite 340
Woodland Hills, CA 91364
Phone: 323-306-4234
Fax: 866-633-0228
tfriedman@toddflaw.com
abacon@toddflaw.com
mgeorge@toddflaw.com
twheeler@toddflaw.com
*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CHERYL SAUER, individually and on behalf of all others similarly situated, Plaintiff, vs. SOLAREDGE TECHNOLOGIES, INC., and DOES 1-10 Inclusive, Defendant. | Civil Case No.:5:22-cv-01584-JGB <br><br> **CLASS ACTION** <br><br> **FIRST AMENDED CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL** |

Plaintiff Cheryl Sauer ("Plaintiff"), individually and on behalf of all others similarly situated, alleges the following:

## NATURE OF THE CASE

1.      This case arises out of the manufacture and sale of cellular plug-ins for inverters by Defendant SolarEdge Technologies, Inc. ("Defendant" or "SE"). The term "Cell Plug-Ins" or "Class Plug-Ins" includes, but is not limited to, models CELL-A-R05-US-S-S2, CELL-A-R12-US-S-S2, and CELL-B-R05-US-S-S2 as set forth in the "Cellular Plug-in with Data Plan for the US" sheet created by SE and attached hereto as Exhibit A.

2.      SE provides energy production monitoring through various apps as a critical piece of the services provided by its inverters.  These systems let a consumer keep track of their home energy production in real-time. This information is transmitted to the consumer via either wired plug-in, Wi-Fi plug-in, or Cell Plug-In as is at issue here.

3.      The Cell Plug-Ins were manufactured, designed, and sold to only work on 3G wireless mobile networks. In 2018 and 2019, the wireless mobile networks that provided the 3G networks that the Cell Plug-Ins accessed issued notices that they would be sunsetting 3G technology in 2022 ("the 3G Sunset") and all devices that used such 3G technology, such as the Cell Plug-Ins, would have to be replaced.

4.      In 2022, the Cell Plug-Ins ceased operating as designed because of the 3G Sunset and consumers, such as Plaintiff, lost access to solar monitoring capabilities which are important and valuable to them.

5.      A defect in the Cell Plug-Ins due to their reliance on 3G networks has resulted in them to fail and be rendered useless. The Cell Plug-Ins cannot be repaired; they must be removed and replaced.

6.      SE was aware of this defect at the time of manufacture and aware that the defect would manifest across all Cell Plug-Ins when the 3G Sunset happened

since at least August 2019, but continued selling inverters that included Cell Plug-Ins.

7.    Plaintiff seeks recovery on behalf of herself and all United States residents who purchased Cell Plug-Ins or purchased properties on which the Cell Plug-Ins were installed (the "Class" for breach of express and implied warranties and for violations of the California consumer protection and unfair business practice statutes.

## JURISDICTION & VENUE

8.    There is original federal subject matter jurisdiction over this matter pursuant to the Class Action Fairness Act of 2005, Pub. L. 109-2, 119 Stat. 4 (Feb. 18, 2005), by virtue of 28 U.S.C. §1332(d)(2), which explicitly provides for the original jurisdiction of federal courts in any class action in which at least 100 members are in the proposed plaintiff class, any member of the plaintiff class is a citizen of a State different from the State of citizenship of any defendant, and the matter in controversy exceeds the sum of $5,000,000.00, exclusive of interests and costs.

9.    In the case at bar, there are at least 100 members in the proposed Class, the total claims of the proposed Class members are in excess of $5,000,000.00 in the aggregate, exclusive of interests and costs, and Plaintiff seeks to represent a California class of consumers, establishing minimum diversity.

10.    There is also federal question jurisdiction because this case arises out of a question of federal law, in particular the Magnuson-Moss Warranty Act, 15 U.S.C. § 2300 et. seq.

11.    Venue is proper in the United States District Court for the Central District of California pursuant to 28 U.S.C. § 1391(b)(1) because Defendant sold and provided the Cell Plug-In to Plaintiff within this district.

## PARTIES

12.    Plaintiff, CHERYL SAUER ("Plaintiff"), is a resident of San

Bernardino, California.  On September 10, 2019, Plaintiff purchased a solar system which included two SE inverters and two Cell-Plugins for installation on her home.

13.    Defendant SOLAREDGE TECHNOLOGIES, INC., ("Defendant") is a corporation that does business in California, including within San Bernardino County, and is incorporated in Delaware and headquartered in Milpitas, California. Plaintiff is informed and believes and thereon alleges that SolarEdge Technologies Ltd. is an Israeli subsidiary of SE and thus SE is responsible for warranties made by SolarEdge Technologies Ltd..

14.    The above-named Defendant, and its subsidiaries and agents, are collectively referred to as "Defendants."  The true names and capacities of the Defendants sued herein as DOE DEFENDANTS 1 through 10, inclusive, are currently unknown to Plaintiff, who therefore sues such Defendants by fictitious names.  Each of the Defendants designated herein as a DOE is legally responsible for the unlawful acts alleged herein.  Plaintiff will seek leave of Court to amend the Complaint to reflect the true names and capacities of the DOE Defendants when such identities become known.

15.    Plaintiff is informed and believes that at all relevant times, each and every Defendant was acting as an agent and/or employee of each of the other Defendants and was acting within the course and scope of said agency and/or employment with the full knowledge and consent of each of the other Defendants. Plaintiff is informed and believes that each of the acts and/or omissions complained of herein was made known to, and ratified by, each of the other Defendants.

## FACTUAL ALLEGATIONS
### SE's Solar Inverters and Cell Plug-Ins

16.    Solar systems consist of a combination of solar panels, which generate alternating current (AC) electricity, which connect to an inverter which converts the electricity to direct current (DC) electricity which is then put directly into the

4

power grid or used by a house.

17.    An inverter also includes additional functions, such as monitoring the solar system and communicating with computer networks.

18.    The communication with computer networks is done through either a direct ethernet connection, a wireless connection, or a cellular connection, such as that done by the Cell Plug-Ins.

19.    The Cell Plug-Ins function by connecting to a 3G cellular wireless network and communicating information from the inverter to a computer network which then provides the information to consumers, such as Plaintiff, through either an app or website.

20.    The Cell Plug-Ins were designed and can only function by connecting to a 3G cellular wireless network. Without a 3G cellular wireless network to access, the Cell Plug-Ins are rendered useless and unable to perform their fundamental purpose—the transfer of information regarding the system which allows consumers to monitor their solar system.

21.    This constitutes a defect in the Cell Plug-Ins and because of this defect, all Cell Plug-Ins relevant to this litigation have now failed before the end of their expected useful life as warranted by Defendant on either a five- or twelve-year basis.

22.    There is no way to repair the defect in the Cell Plug-Ins and restore their functionality. The only means for addressing the failure of the Cell Plug-Ins is to remove them and replace them with another type of plug-in.

**SE's Knowledge and Suppression of Warranty Claims**

23.    SE has known since it first started manufacturing and selling the Cell Plug-Ins that the plug-ins relied on 3G wireless networks and that the deprecation of such networks would render the Cell Plug-Ins defective and useless.

24.    SE has also known since at least August 2019 that the 3G wireless networks its Cell Plug-Ins rely on would be deprecated in 2022, at which point the

Cell Plug-Ins would be rendered defective and useless.

25.     SE issues an express Limited Product Warranty ("the Warranty") which covers "defects and materials of the below-listed products for the applicable Warranty Period" with "products" including "Wireless Communication Products" such as the Cell Plug-Ins. This express warranty as was in effective when Plaintiff made her purchase is attached hereto as Exhibit B, however it is effectively the same to SE's "Limited Product Warranty" at all times.

26.     With respect to the Cell Plug-Ins, the warranty covers 5 years from either 4 months of the date of shipment or the date of installation, whichever is earlier.

27.     SE knew that the Cell Plug-Ins were covered under the warranty claim, however preemptively sent out emails, including on January 27, 2022 as attached as Exhibit C, advising consumers that it would not be honoring its warranty with respect to Cell Plug-Ins and consumers would have to purchase and install their own replacement plug-ins at significant cost.

28.     SE also published and linked consumers to a FAQ, attached as Exhibit D, on its website further reiterating that the "end user covers the cost" of replacement and that it was not covered under its warranty.

29.     SE's affirmative actions to disclaim warranty coverage on the Cell Plug-Ins despite the existence of such coverage was deliberate and unconscionable and done by SE for purposes of not having to pay for the replacement of its Cell Plug-Ins, which cost hundreds of dollars each.

## SE's Warranty and Representations

30.     SE issued the Warranty for the Cell Plug-Ins which states that the Cell Plug-Ins would be "cover[ed] [for] defects in workmanship and materials" for a period of "5 years commencing on the earlier of [] 4 months from the date the product is shipped from SolarEdge; and [] the installation of the product." Exhibit B.

31.    The Warranty applies to both "the buyer who has purchased the Products from an authorized seller of SolarEdge . . . and may be transferred from buyer to any assignee, and will remain in effect for the time period remaining under the foregoing warranties, *provided* that the Products are not moved outside of its original country of installation and any reinstallation is done in accordance with the installation directions and use guidelines accompany the Products." Plaintiff, as the purchaser of a Cell Plug-In from an authorized seller of SolarEdge, was thus entitled to enforce the provisions of the Warranty.

32.    The Warranty provides that in the event of a defect in workmanship or materials, SE will either "repair the Product at SolarEdge's facilities or on-site; or issue a credit note for the defective Product in an amount up to its actual value at the time buyer notifies SolarEdge of the defect, as determined by SolarEdge, for use toward the purchase of a new Product; or provide Buyer with replacement units for the Product."

33.    Because the Cell Plug-Ins at issue here no longer function at all, SE cannot in fact replace or repair the Cell Plug-Ins. The only remedy would be to install newly manufactured cellular plug-ins that work on new networks. Accordingly, the remedies offered by the Warranty fail of their essential purpose, i.e., to put the purchaser in the position he or she would have enjoyed but for the breach of the Warranty. The only effective remedy for breach of the Warranty is to remove the existing Cell Plug-Ins and replace them with newer models.

34.    The Warranty purports to limit the rights and remedies of purchasers of the Cell Plug-Ins, including, but not limited to:

A. "All costs, including, without limitation, labor, travel and boarding costs of SolarEdge service personnel or others that are incurred for labor relating to repairs, uninstalling and reinstalling of Products on-site, as well as costs related to buyer's employees and contractors repair or replacement activities, are not covered by the Limited Warranty and,

unless otherwise agreed in writing in advance by SolarEdge, shall be borne by the buyer."

B. SE disclaims "ANY OTHER WARRANTIES WITH RESPECT TO THE PRODUCTS PURCHASED BY BUYER FROM SOLAREDGE, WHETHER EXPRESS OR IMPLIED, WRITTEN OR ORAL (INCLUDING ANY WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE)."

C. SE states that "SolarEdge's sole obligation and buyer's exclusive remedy for any defect warranted hereunder is limited to those actions expressly stated above."

35.    These purported limitations and exclusions (the "Exclusions") are unenforceable against Plaintiff and the Class. The Exclusions were not bargained for by SE and its customers but were imposed unilaterally by SE. The Exclusions are unfair because they are outside the reasonable expectations of the parties thereto, deny consumers an effective remedy and purpose to limit the rights of consumers in ways that are unenforceable under the Song-Beverly Consumer Warranty Act and Magnuson-Moss Warranty Act.

36.    The Exclusions' limitation on SE's liability solely to the cost of the replacement of the Cell Plug-Ins and exclusion of any other damages or labor costs is also unfair because the cost of installing the Cell Plug-In is a significant cost potentially greater than the cost of the Cell Plug-In itself.

37.    The unfairness of the Exclusions is also demonstrated by unenforceable provisions of the Warranty that state it is the "exclusive remedy" and the purported exclusion of implied warranties. Plaintiff and the Class have substantial rights and remedies available for breach of implied and express warranty due to the defective nature of the Cell Plug-Ins which SE cannot lawfully preclude them from asserting.

38.    Additionally, SE makes further representations in the product

datasheet (attached as Exhibit A) for the Cell Plug-Ins themselves and as noted in the Warranty which advises that "[s]ome components may carry their own manufacturer warranty. See product datasheet for more details."

39.    The product datasheet for the Cell Plug-Ins represents that the plug-ins "[c]onnect[] SolarEdge inverters wirelessly to the internet," "[e]nable[] remote analysis and troubleshooting," and a "5-year/12-year data plan is included."

40.    The datasheet also specifically makes the representation that "For 12 year data plans – in the event that third party cellular technology currently used by SolarEdge [] is phased out or becomes otherwise unavailable, SolarEdge shall ship replacement parts such as modem and/or sim card of a prevailing technology. Upon such replacement, the new prevailing hardware shall continue to be covered for the remainder of the original data plan duration."

41.    These representations and warranties were broadly disseminated on SE's website. These representations were false because the Cell Plug-Ins did not provide remote analysis and troubleshooting for a period of 5-years or 12-years as promised and also because SE refused to honor the specific representation made that if the technology became deprecated it would replace it.

42.    Purchasers of the Cell-Plugins as part of solar systems rely on distributors, sellers, and installers of solar systems to advise them concerning the advantages of purchasing solar systems and of the unique benefits of different manufacturers, such as SE. Accordingly, SE knew that if it wanted to sell inverters including Cell Plug-Ins to end users, it first had to convince distributors, sellers, and installers to sell its products over competitors.

43.    SE's marketing plan for its products, including the Cell Plug-Ins, relies almost exclusively on authorized distributors and sellers selling its products to consumers, such as Plaintiff.

44.    SE consistently marketed and promoted its app and website monitoring system as enabled by the Cell Plug-Ins to distributors, sellers, and

installers who thereafter communicated this information to consumers, including Plaintiff, as a reason to purchase a solar system including a SE inverter and Cell Plug-In.

45.    In 2019, as part of her purchase of her solar system, Plaintiff was provided information about SE and its monitoring system as well as SE's warranty with respect to the performance of its monitoring system.

46.    If SE's authorized distributors, sellers, and installers had been made aware of the falsity of SE's representations that the Cell Plug-Ins were free form defects in materials and workmanship, would provide monitoring services for between five and twelve years, and were covered under warranty, they would have recommended that Plaintiff and the Class not purchase SE products including the Cell Plug-Ins and instead select another inverter system.  If the distributors, sellers, and installers had recommended against purchasing SE's products including Cell Plug-Ins, Plaintiff and the Class would not have purchased them. If members of the Class had been aware from any source of these misrepresentations and omissions, they would not have purchased products including the Cell Plug-Ins.

**Plaintiff's Individual Allegations**

47.     On or about September 2019, Plaintiff began shopping for a solar system for her home.

48.    She ultimately decided to go with an authorized installer of SE products who recommended a system consisting of 33 325 QCell panels hooked into a SE StoreEdge 7600 Inverter, which is a combination battery and inverter, and a SE 3800 HD Wave Inverter.  Both inverters had Cell Plug-Ins.

49.    The installer advised Plaintiff that, based on SE's representations, the SE inverters would allow Plaintiff to monitor and troubleshoot her solar production from an app or website offered by SE and that it included a cellular plan of between five and twelve years along with a warranty.

50.    Being able to monitor her solar system remotely was important to

Plaintiff and a key part of her decision with regards to which components to include in her solar system.

51.    Plaintiff relied on these representations and warranties in deciding to purchase a solar system which included the Cell Plug-Ins. Had the authorized installer or any other person informed Plaintiff that the Cell Plug-Ins were not actually warranted to work and, in fact, would become useless within three (3) years, she would not have agreed to purchase products including SE's Cell Plug-Ins.

52.    On September 10, 2021, Plaintiff executed her contract with the authorized installer and agreed to purchase the solar system including the Cell Plug-Ins for a net cost of $36,876 after tax credit.

53.    On or around January 27, 2022, Defendant sent Plaintiff an email informing her that the Cell Plug-In component of her inverters would be rendered inoperable by the deprecation of the 3G cellular networks, and that if the modem was not replaced Plaintiff would no longer have access to her system monitoring.

54.    Defendant also directed its sales agent, 365 Pronto, to begin repeatedly emailing Plaintiff about purchasing a replacement plug-in which would cost $633 including parts and labor.

55.    Because Defendant affirmatively disclaimed its Warranty through its email and published FAQ (Exhibit D), Plaintiff felt that she had no choice except to incur the parts and labor costs on her own to replace the defect Cell Plug-Ins.

56.    Plaintiff was required to replace not one, but two Cell Plug-Ins, with the first being in the panel inverter and the second being in the battery inverter.

57.    As such, Plaintiff has incurred labor and parts costs to replace the two Cell Plug-Ins modems in order to maintain her system monitoring plan, despite Defendant's representations that the system monitoring plan would be provided for a period of between five and twelve-years and also under a Warranty that covered defects.

58.    The failure of the Cell Plug-Ins due to a deprecation of the 3G wireless network constitutes a defect which is a breach of the Warranty. On June 9, 2022, through her attorneys of record, Plaintiff notified SE by letter (Exhibit E) of the breach of warranty and CLRA on behalf of herself and the Class and demanded SE repair the defects and compensate Plaintiff and the Class for out-of-pocket costs.

59.    SE has failed to respond to this letter and thus refused to honor its Warranty.

## CLASS ALLEGATIONS

60.    Plaintiff brings a Class claim pursuant to Fed. R. Civ. P. 23 on behalf of herself and all others similarly situated members of the proposed Class defined as follows:

>        All persons in the United States (a) who purchased the
>        Cell Plug-Ins from an authorized seller of SolarEdge or
>        (b) who currently own systems which include Cell Plug-
>        Ins.

61.    Excluded from the Class are Defendant, any entity in which any Defendant has a controlling interest, and Defendant's legal representatives, heirs and successors, and any judge to whom any aspect of this case is assigned, and any member of such a judge's immediate family.

62.    Plaintiff also seeks to represent a Subclass consisting of all Class Members within the State of California. Plaintiff reserves the right to modify or amend the Class definition as appropriate.

63.    Defendant, its employees, and agents are excluded from the Class. Plaintiff does not know the number of members in The Class, but believes the Class members number in the hundreds, if not more.  Thus, this matter should be certified as a Class Action to assist in the expeditious litigation of the matter.

64.    The Class are so numerous that the individual joinder of all of its members is impractical.  While the exact number and identities of the Class

members are unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff is informed and believes and thereon alleges that the Class includes tens of thousands of members.  Plaintiff alleges that the Class members may be ascertained by the records maintained by Defendant.

65.    Plaintiff and members of the Class were harmed by the acts of Defendant in at least the following ways: Defendant sold Cell Plug-Ins which were represented to include a Warranty as well as a five or twelve-year cellular data plan when in fact such Cell Plug-Ins became defective and useless following the deprecation of the 3G wireless networks in 2022.  This caused the Class members to suffer a loss of value for their Cell Plug-Ins.

66.    Common questions of fact and law exist as to all members of the Class which predominate over any questions affecting only individual members of the Class.  These common legal and factual questions, which do not vary between Class members, and which may be determined without reference to the individual circumstances of any Class members, include, but are not limited to, the following:

(a)    Whether Defendant violated California Bus. & Prof. Code § 17200, et seq. by, among other things, engaging in unfair, unlawful, or fraudulent practices;

(b)    Whether Defendant breached their implied warranties to Plaintiff and the Class;

(c)    Whether Defendant violated California Consumer Legal Remedies Act, Cal. Civ. C. § 1750, et seq. by, misrepresenting the nature or terms of its Cell Plug-Ins;

(d)    Whether Defendant breached its express warranties to Plaintiff and the Class;

(e)    Whether Plaintiff and the Class are entitled to compensatory damages, and the amount of such damages; and

(f)    Whether Defendant should be declared financially responsible

for the costs and expenses of removal and replacement of all Cell Plug-Ins as well as compensation for the lost monitoring ability during the outage following the 3G Sunset.

67.     As a person that purchased a system which included two Cell Plug-Ins that became defective and needed replacement in 2022, Plaintiff is asserting claims that are typical of the Class.

68.     Plaintiff will fairly and adequately protect the interests of the members of The Class.  Plaintiff has retained attorneys experienced in the prosecution of class actions.

69.     A class action is superior to other available methods of fair and efficient adjudication of this controversy, since individual litigation of the claims of all Class members is impracticable.  Even if every Class member could afford individual litigation, the court system could not.  It would be unduly burdensome to the courts in which individual litigation of numerous issues would proceed. Individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same complex factual issues.  By contrast, the conduct of this action as a class action presents fewer management difficulties, conserves the resources of the parties and of the court system, and protects the rights of each Class member.

70.     The prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of the other Class members not parties to such adjudications or that would substantially impair or impede the ability of such non-party Class members to protect their interests.

71.     Defendant has acted or refused to act in respects generally applicable to The Class thereby making appropriate final and injunctive relief with regard to the members of the Classes as a whole.

72.     As a result of the facts alleged herein, Plaintiff and the Class have been damaged in an amount equal to the cost to replace and install new cellular plug-ins to replace the Cell Plug-Ins and render their systems operable. Additionally, the acts of SE in misrepresenting and omitting relevant facts concerning its Cell Plug-Ins and actively seeking to enforce the Exclusions and suppress claims through affirmative emails discouraging such claims were malicious in that they represent "despicable conduct" carried out by SE "with a willful and conscious disregard of the rights or safety of others", oppressive conduct in that they represent "despicable conduct that subjects a person to a cruel and unjust hardship in conscious disregard of that person's right," and fraudulent conduct. Accordingly, Plaintiff and the Class are entitled to punitive damages according to proof.

<h2 style="text-align:center">COUNT I</h2>

<h2 style="text-align:center">Violation of Unfair Business Practices Act</h2>

<h2 style="text-align:center">(Cal. Bus. & Prof. Code §§ 17200 et seq.)</h2>

*Individually, and on behalf of the Class*

73.     Plaintiff incorporates by reference each allegation set forth above.

Actions for relief under the unfair competition law may be based on any business act or practice that is within the broad definition of the UCL.  Such violations of the UCL occur as a result of unlawful, unfair or fraudulent business acts and practices.  A plaintiff is required to provide evidence of a causal connection between a defendants' business practices and the alleged harm--that is, evidence that the defendants' conduct caused or was likely to cause substantial injury. It is insufficient for a plaintiff to show merely that the Defendant's conduct created a risk of harm.  Furthermore, the "act or practice" aspect of the statutory definition of unfair competition covers any single act of misconduct, as well as ongoing misconduct.

<h2 style="text-align:center">UNFAIR</h2>

74.     California Business & Professions Code § 17200 prohibits any "unfair
. . business act or practice."  Defendant's acts, omissions, misrepresentations, and
practices as alleged herein also constitute "unfair" business acts and practices
within the meaning of the UCL in that its conduct is substantially injurious to
consumers, offends public policy, and is immoral, unethical, oppressive, and
unscrupulous as the gravity of the conduct outweighs any alleged benefits
attributable to such conduct.  There were reasonably available alternatives to
further Defendant's legitimate business interests, other than the conduct described
herein.  Plaintiff reserves the right to allege further conduct which constitutes other
unfair business acts or practices.  Such conduct is ongoing and continues to this
date.

75.     In order to satisfy the "unfair" prong of the UCL, a consumer must
show that the injury: (1) is substantial; (2) is not outweighed by any countervailing
benefits to consumers or competition; and, (3) is not one that consumers
themselves could reasonably have avoided.

76.     Here, Defendant's conduct has caused and continues to cause
substantial injury to Plaintiff and members of the Class.  Plaintiff and members of
the Class have suffered injury in fact due to Defendant's decision to refuse to
honor its Warranty and representations with regards to the Cell Plug-Ins and
affirmative actions to attempt to suppress the submission of such claims, including
by seeking to enforce the Exclusions.  Thus, Defendant's conduct has caused
substantial injury to Plaintiff and the members of the Class.

77.     Moreover, Defendant's conduct as alleged herein solely benefits
Defendant while providing no benefit of any kind to any consumer.  Such
deception utilized by Defendant convinced Plaintiff and members of the Class that
the Cell Plug-Ins were not covered by Warranty and thus they would need to pay in
excess of $500 out of pocket to replace these products that Defendant actually had
an obligation to replace. Further, despite knowing in 2018 that its Cell Plug-Ins

16

would become defective within the minimum five (5) year cellular plans it sold for the Cell Plug-Ins when the 3G networks were deprecated in 2022, Defendant continued to manufacture and sell, through its authorized resellers and installers, Cell Plug-Ins. Defendant unfairly profited by refusing to pay the costs it was required to pay under a warranty and instead foisting those costs onto Plaintiff and the Class. Thus, the injury suffered by Plaintiff and the members of the Class is not outweighed by any countervailing benefits to consumers.

78.    Finally, the injury suffered by Plaintiff and members of the Class is not an injury that these consumers could reasonably have avoided. Defendant did not represent or advise consumers that the Cell Plug-Ins would become defective in 2022 until January 2022 at which point they had been paid for and installed. As such, Defendant took advantage of Defendant's position of perceived power in order to deceive Plaintiff and the Class members to purchase Cell Plug-Ins which were represented to have features and warranties which SE knew it would not honor. Therefore, the injury suffered by Plaintiff and members of the Class is not an injury which these consumers could reasonably have avoided.

79.    Thus, Defendant's conduct has violated the "unfair" prong of California Business & Professions Code § 17200.

## **FRAUDULENT**

80.    California Business & Professions Code § 17200 prohibits any "fraudulent ... business act or practice." In order to prevail under the "fraudulent" prong of the UCL, a consumer must allege that the fraudulent business practice was likely to deceive members of the public.

81.    The test for "fraud" as contemplated by California Business and Professions Code § 17200 is whether the public is likely to be deceived. Unlike common law fraud, a § 17200 violation can be established even if no one was actually deceived, relied upon the fraudulent practice, or sustained any damage.

82.    Here, not only were Plaintiff and the Class members likely to be

deceived, but these consumers were actually deceived by Defendant.  Such deception is evidenced by the fact that Plaintiff agreed to purchase a solar system including two SE inverters and Cell Plug-Ins with the understanding that such Cell Plug-Ins came with a data plan of between five and twelve years as well as a warranty that would cover defects. This was in fact false, because the Cell Plug-Ins became defective in 2022 as planned and SE refused to repair them. Plaintiff's reliance upon Defendant's deceptive statements is reasonable due to the unequal bargaining powers of Defendant and Plaintiff. For the same reason, it is likely that Defendant's fraudulent business practice would deceive other members of the public.

83.    Thus, Defendant's conduct has violated the "fraudulent" prong of California Business & Professions Code § 17200.

**UNLAWFUL**

84.    California Business and Professions Code Section 17200, et seq. prohibits "any unlawful…business act or practice."

85.    SE's conduct was unlawful because it violated the Consumer Legal Remedies Act, Magnuson-Moss Warranty Act, and Song-Beverly Consumer Warranty Act as set forth herein.

86.    Defendant has thus engaged in unlawful, unfair, and fraudulent business acts entitling Plaintiffs and Classes Members to judgment and equitable relief against Defendant, as set forth in the Prayer for Relief.  Additionally, pursuant to Business and Professions Code section 17203, Plaintiff and Class Members seek an order requiring Defendant to immediately cease such acts of unlawful, unfair, and fraudulent business practices and requiring Defendant to correct its actions.

## COUNT II
## Violation of the California Consumer Legal Remedies Act
## (Cal. Civ. C. § 1750 et seq.)

*Individually, and on behalf of the Class*

87.    Plaintiff incorporates by reference each allegation set forth in the preceding paragraphs.

88.    The defect alleged herein is detailed at Paragraphs 1 through 6 and 20 through 22. SE's knowledge and concealment of the defect is detailed at paragraphs 23 through 24. SE's representations concerning its Cell Plug-Ins and the falsity of those representations is detailed at paragraphs 25 through 26 and 38 through 41. SE's dissemination of its misrepresentations and its effects through its distributors, sellers, and installers to induce adverse reliance by consumers on those representations and omissions is detailed at paragraphs 42 through 46 and 48 through 52. SE's refusal to remedy the problem is addressed at paragraphs 53 through 59. The Exclusions and their unfairness is detailed at paragraphs 30 through 37. SE's attempts to affirmatively disclaim and suppress warranty claims is detailed at paragraphs 27 through 29 and 77 through 78.

89.    The Cell Plug-Ins are "goods" as defined by Cal. Civ. C. § 1761(a).

90.    Defendant SE is a "person" as defined by Cal. Civ. C. § 1761(c).

91.    Plaintiff and members of the Class are "consumers" as defined by Cal. Civ. C. § 1761(d) who purchased the Cell Plug-Ins for personal, family, and household purposes.

92.    The purchase by Plaintiff and members of the Class of the Cell Plug-Ins are "transactions" as defined by Cal. Civ. C. § 1761(e).

93.    Under the Consumer Legal Remedies Act, Cal. Civ. C. § 1770 et. seq., the following methods of competition are unlawful when any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumers:

        a.    Representation that goods or services of a particular standard, quality, or grade, or that goods are of a particular style of model, if they are of another. Cal. Civ. C. §  1770(7).

b.  Representing that a transaction confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law. Cal. Civ. C. § 1770(14):

c.  Representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not. Cal. Civ. C. § 1770(16).

d.  Inserting an unconscionable provision in a contract. Cal. Civ. C. § 1770(19)

94.   SE violated Cal. Civ. C. § 1770(a)(7), (14), and (16) when it represented that the Cell Plug-Ins had certain characteristics regarding their length of use when they did not. These representations were disseminated as detailed in paragraphs 42 through 26, 48 through 52, 27 through 29, and 77 through 78. SE violated Cal. Civ. C. § 1770(a)(14), (16), and (19) when it represented that the Cell Plug-Ins came with a warranty that would cover the defect presented and by including unconscionable Exclusions as set forth in paragraphs 30 through 37.

95.   Plaintiff served SE with notice of its violations of the CLRA pursuant to Cal. Civ. C. § 1782 by certified mail on June 9, 2022, attached as Exhibit E. Defendant SE failed to provide or offer to provide remedies for its violations of the CLRA within 30 days of the date of the notice.

## COUNT III

## Breach of Express Warranty

*Individually, and on behalf of the Class*

96.   Plaintiff incorporates by reference each allegation set forth in the preceding paragraphs.

97.   SE made the warranties described in the Warranty and Exhibit A.

98.   SE is not entitled to enforce the Exclusions described in paragraphs 30 through 37 because they are unconscionable and violate the provisions of the Song-Beverly Consumer Warranty Act and the Magnuson-Moss Warranty Act.

99.    Because the Cell Plug-Ins have failed within their expected useful life, SE is in breach of its Warranty and representations made in Exhibit A.

100.   As detailed above, SE has failed to remedy the breach of the warranties for either Plaintiff or the Class.

101.   Although Plaintiff does not believe that notice to SE of its breaches of warranty are required under applicable law, Plaintiff has provided notice of its breached of the warranties individually and on behalf of the Class at Exhibit E.

102.   Further notice to SE of its breach of the warranties would be futile because SE is aware of and has acknowledge the defects in the Cell Plug-Ins but has affirmatively set forth that it will not honor its warranty with respect to the Cell Plug-Ins.

103.   As a result of SE's breach of the Warranty and warranties, Plaintiff and the Class have suffered damages in an amount to be proven at trial.

<u>COUNT IV</u>

**<u>Breach of Express Warranty – Magnuson-Moss Warranty Act</u>**

**<u>(Magnuson-Moss Warranty Act, 15 U.S.C. § 2300 et. seq.)</u>**

*Individually, and on behalf of the Class*

104.   Plaintiff incorporates by reference each allegation set forth in the preceding paragraphs.

105.   The Cell Plug-Ins are a consumer product as defined in 15 U.S.C. § 2301(1).

106.   Plaintiff and the members of the Class are consumers as defined in 15 U.S.C. § 2301(3).

107.   SE is a supplier and warranty as defined in 15 U.S.C. § 2301(4) & (5).

108.   The Warranty contains "written warranties" within the meaning of 15 U.S.C. § 2301(6).

109.   As alleged above, SE has breached the Warranty.

110.   Additionally, pursuant to 15 U.S.C. § 2304(d)(1), SE may not assess

Plaintiff or the Class any costs the warrantor or his representatives occur in connection with the required remedy of a warranted product because "if any incidental expenses are incurred because the remedy is not made within a reasonable time or because the warrantor imposed an unreasonable duty upon the consumer as a condition of securing remedy, then the consumer shall be entitled to recover reasonable incidental expenses which are so incurred in any action against the warrantor." SE has refused to pay all costs associated with the removal and replacement of the Cell Plug-Ins.

111.   Plaintiff has provided SE with notice of breach of the Warranty and a reasonable opportunity to cure the breach. In addition, the notice afforded SE notice on behalf of the Class of its breach of the Warranty and a reasonable opportunity to remedy the breach. SE has failed to remedy the breach of its obligations to the Class under the Warranty.

112.   Further notice to SE of its breach of the warranties would be futile because SE is aware of and has acknowledge the defects in the Cell Plug-Ins but has affirmatively set forth that it will not honor its warranty with respect to the Cell Plug-Ins.

113.   As a result of SE's breach of the Warranty and warranties, Plaintiff and the Class have suffered damages in an amount to be proven at trial.

## COUNT V

## Breach of Express Warranty – Song-Beverly Warranty Act

## (Cal. Civ. C. § 1792 et. seq.)

*Individually, and on behalf of the Subclass*

114.   Plaintiff incorporates by reference each allegation set forth in the preceding paragraphs.

115.   The Cell Plug-Ins are consumer product as defined in California's Song-Beverly Consumer Warranty Act.

116.   SE is a "manufacturer" within the meaning of the statute.

117.    Plaintiff and members of the Subclass purchased Cell Plug-Ins within the State of California.

118.    As alleged above, SE breached the Warranty.

119.    Plaintiff has provided SE with notice of breach of the Warranty and a reasonable opportunity to cure the breach. In addition, the notice afforded SE notice on behalf of the Subclass of its breach of the Warranty and a reasonable opportunity to remedy the breach. SE has failed to remedy the breach of its obligations to the Subclass under the Warranty.

120.    Further notice to SE of its breach of the warranties would be futile because SE is aware of and has acknowledge the defects in the Cell Plug-Ins but has affirmatively set forth that it will not honor its warranty with respect to the Cell Plug-Ins.

121.    As a result of SE's breach of the Warranty and warranties, Plaintiff and the Subclass have suffered damages in an amount to be proven at trial.

## COUNT VI

### Breach of Implied Warranty

*Individually, and on behalf of the Class*

122.    Plaintiff incorporates by reference each allegation set forth in the preceding paragraphs.

123.    The sale by SE of the Cell Plug-Ins was accompanied by implied warranties that the Cell Plug-Ins were merchantable and fit for the ordinary purpose for which such products were sold (the "Implied Warranties").

124.    SE issued the Warranty to Plaintiff and the Class. SE is therefore in direct privity with Plaintiff and all members of the Class.

125.    Further, the Implied Warranties incorporated into the transaction between SE and its immediate purchasers, including authorized sellers and installers (the "SE Vendors") were intended solely to benefit Plaintiff and the Class. Plaintiff and the Class are therefore entitled to enforce the Implied

Warranties against SE.

126.    This intent is evidence by the fact that the written Warranty issued by SE not only extends to ender users but to their successors. Further, the Implied Warranties made by SE to the SE Vendors would be of no economic value to the SE Vendors unless Plaintiff and the Class received the benefits of such warranties. The SE Vendors are not users of the Cell Plug-Ins. The economic benefit of implied warranties made by SE to the SE Vendors depends on the ability of end users who buy their products to obtain redress form SE if the warranties are breached.

127.    Under *Gilbert Financial Corp. v. Steelform Contracting Co.*, 82 Cal. App. 3d 65 (1978), the Implied Warranties made by SE to the SE Vendors are enforceable whether or not Plaintiff or the Class were in privity of contract with SE.

128.    SE breached the Implies Warranties in that the Cell Plug-Ins are not fit for their intended use and not of merchantable quality because they have been rendered defective and inoperable because of the 3G Sunset.

129.    Although Plaintiff does not believe that notice to SE of its breaches of warranty are required under applicable law, Plaintiff has provided SE with notice of breach of the Warranty and a reasonable opportunity to cure the breach. In addition, the notice afforded SE notice on behalf of the Class of its breach of the Warranty and a reasonable opportunity to remedy the breach. SE has failed to remedy the breach of its obligations to the Class under the Warranty.

130.    Further notice to SE of its breach of the warranties would be futile because SE is aware of and has acknowledge the defects in the Cell Plug-Ins but has affirmatively set forth that it will not honor its warranty with respect to the Cell Plug-Ins.

131.    As a result of SE's breach of the Implied Warranties, Plaintiff and the Class have suffered damages in an amount to be proven at trial.

## COUNT VII

### Breach of Implied Warranty – Magnuson-Moss Warranty Act
### (Magnuson-Moss Warranty Act, 15 U.S.C. § 2300 et. seq.)

*Individually, and on behalf of the Class*

132.    Plaintiff incorporates by reference each allegation set forth in the preceding paragraphs.

133.    The Cell Plug-Ins are a consumer product as defined in 15 U.S.C. § 2301(1).

134.    Plaintiff and the members of the Class are consumers as defined in 15 U.S.C. § 2301(3).

135.    SE is a supplier and warranty as defined in 15 U.S.C. § 2301(4) & (5).

136.    Under 15 U.S.C. § 2301(7), SE extended the Implied Warranties to Plaintiff and the Class.

137.    Defendant breached the Implied Warranties by selling Cell Plug-Ins that were neither merchantable nor fit for their intended purpose.

138.    Under 15 U.S.C. § 2310(e), notice of breach of warranty need not be provided until after Plaintiff has been appointed Class Representative.

139.    Plaintiff has provided SE with notice of breach of the Warranty and a reasonable opportunity to cure the breach. In addition, the notice afforded SE notice on behalf of the Class of its breach of the Warranty and a reasonable opportunity to remedy the breach. SE has failed to remedy the breach of its obligations to the Class under the Warranty.

140.    Further notice to SE of its breach of the warranties would be futile because SE is aware of and has acknowledge the defects in the Cell Plug-Ins but has affirmatively set forth that it will not honor its warranty with respect to the Cell Plug-Ins.

141.    As a result of SE's breach of the Implied Warranties, Plaintiff and the Class have suffered damages in an amount to be proven at trial.

## COUNT VIII

### Breach of Implied Warranty – Song-Beverly Warranty Act

### (Cal. Civ. C. § 1792 et. seq.)

*Individually, and on behalf of the Subclass*

142.   Plaintiff incorporates by reference each allegation set forth in the preceding paragraphs.

143.   Under the Song-Beverly Consumer Warranty Act, every sale of consumer goods in the State of California is accompanied by a manufacturer's implied warranty that the goods are merchantable.

144.   The Cell Plug-Ins are consumer goods within the meaning of the statute.

145.   Defendant SE is a "manufacturer" within the meaning of the statute.

146.   Plaintiff and members of the Subclass purchased Cell Plug-Ins within the State of California.

147.   By operation of law, Defendant made Implied Warranties to Plaintiff and the Class concerning the Cell Plug-Ins.

148.   Defendant breached those Implied Warranties by selling Cell Plug-Ins which were not of merchantable quality and failed to perform the tasks for which they were intended.

149.   Plaintiff and the Subclass do not have to be in privity because they are intended beneficiaries of the Implied Warranties between SE and SE Vendors as set forth above and therefore are entitled to enforce the Implied Warranties against SE.

150.   Plaintiff has provided SE with notice of breach of the Warranty and a reasonable opportunity to cure the breach. In addition, the notice afforded SE notice on behalf of the Class of its breach of the Warranty and a reasonable opportunity to remedy the breach. SE has failed to remedy the breach of its obligations to the Class under the Warranty.

151.    Further notice to SE of its breach of the warranties would be futile because SE is aware of and has acknowledge the defects in the Cell Plug-Ins but has affirmatively set forth that it will not honor its warranty with respect to the Cell Plug-Ins.

152.    As a result of SE's breach of the Implied Warranties, Plaintiff and the Subclass have suffered damages in an amount to be proven at trial.

## **MISCELLANEOUS**

153.    Plaintiff and Class Members allege that they have fully complied with all contractual and other legal obligations and fully complied with all conditions precedent to bringing this action or that all such obligations or conditions are excused.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff and members of the Class and Subclass respectfully pray for the following relief:

a.    An order certifying the Class under Fed. R. Civ. P. 23 and appointing Plaintiff as Representative of the Class and Subclass;

b.    An order certifying the undersigned counsel as Class Counsel;

c.    An order requiring Defendant, at its own cost, to notify all Class Members of the fraudulent and deceptive conduct herein;

d.    An injunction enjoining SE from enforcing, threatening to enforce or claiming the right to enforce any of the Exclusions;

e.    Actual damages suffered by Plaintiff and Class and Subclass Members as applicable or full restitution;

f.    Any and all statutory enhanced damages;

g.    For exemplary and punitive damages according to proof;

h.    All reasonable and necessary attorneys' fees and costs provided by statute, common law or the Court's inherent power;

i.    Pre- and post-judgment interest; and

j.      All other relief, general or special, legal and equitable, to which Plaintiff and Class Members may be justly entitled as deemed by the Court.

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff, on behalf of herself and all others similarly situated, demands a trial by jury on all questions of fact raised by the Complaint.

Dated:  October 21, 2022          Respectfully submitted,

LAW OFFICES OF TODD M. FRIEDMAN , PC


By: /s/ Todd M. Friedman
TODD M. FRIEDMAN, ESQ.
*Attorneys for Plaintiff*

Filed electronically on this 21st Day of October, 2022, with:

United States District Court CM/ECF system.

Notification sent electronically on this 21st Day of October, 2022, to:

Honorable Jesus G. Bernal
United States District Court
Central District of California

And All Counsel of Record as Recorded On The Electronic Service List

/s/ Todd M. Friedman, Esq.

TODD M. FRIEDMAN